**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

ROBIN D. COOK and
KEVIN COOK,

                Plaintiffs,

v.                              CIVIL ACTION NO.  5:06-cv-00627

JONES & JORDAN ENGINEERING, INC.,
JAMES A. JONES, KEVIN W. JORDAN, AND
THOMAS W. HANNIGAN,

                Defendants,

AND

JONES & JORDAN ENGINEERING, INC.,
JAMES A. JONES AND KEVIN W. JORDAN,

                Third-Party Plaintiffs,

v.

MOUNTAIN STATE BLUE CROSS & BLUE
SHIELD, INC.,

                Third-Party Defendant.

**MEMORANDUM OPINION AND ORDER**

This action involves a dispute arising under the Employee Retirement Income Security Act

of 1974, 29 U.S.C. § 1001, *et. seq.* (ERISA).  Before the Court are the Motion for Summary

Judgment by Third-Party Defendant, Mountain State Blue Cross & Blue Shield, Inc. (Mountain

State) [Docket 99]; Plaintiff's Motion for Summary Judgment [ Docket 106]; and Defendant/Third-

Party Plaintiffs, Jones & Jordan Engineering, Inc., James A. Jones, and Kevin W. Jordan's[1] Motion for Leave to File a Sur-reply to Plaintiffs' Motion for Summary Judgment [Docket 120].

## I.  BACKGROUND

On January 5, 2009, the parties filed Joint Stipulations of Fact [Docket 136].  Upon review of this document, it is clear that the facts underlying the first eight counts of Plaintiff's complaint are largely uncontested.  Beginning in or about December 13, 2001, Jones & Jordan entered into an agreement with Mountain State whereby Mountain State would provide a welfare benefit plan (the Plan) for the employees of Jones & Jordan.  The Plan was governed and administered in accordance with ERISA.[2]  One of Jones & Jordan's employees, Robin Cook, participated in the Plan and at all relevant times tendered required premium contributions, ten dollars per pay period, for her and her dependants to Jones & Jordan through payroll deductions.   Under the Plan, Jones & Jordan was required to contribute an additional portion of the premium on her behalf and was responsible for tendering all premium payments to Mountain State.

From May 1, 2003, through October 1, 2003, Jones & Jordan deducted premium payments from Ms. Cook's payroll.  However, it did not tender the required premium contribution to Mountain State for any of its employees when premium contributions were due: the payment due on January 1, 2003, was not made until January 9, 2003; the payment due on February 1, 2003, was not made until March 1, 2003; the payment due on March 1, 2003, was not made until May 20, 2003; and the

---

[1]  Unless referred to individually, the Court will refer to all defendants/third-party plaintiffs as "Jones & Jordan" collectively.

[2]  Mr. Jones and Mr. Jordan admit that they were responsible for administering the Plan, that they were fiduciaries within the meaning of ERISA, and that they understood that it was their responsibility to inform their employees of their rights under ERISA and to comply with the provisions of ERISA.

payment due April 1, 2003, was not made until July 16, 2003.  In addition no payment was made for May or June 2003.  Jones & Jordan made no payment for premium coverage after April 2003.

By mid-August 2003, Jones & Jordan allegedly was advised that because it failed to tender the required premium contribution to Mountain State, benefits to its employees would be terminated. During this time, Ms. Cook and her son Kevin incurred significant medical expenses.  However, because Jones & Jordan failed to tender the required premium due under the contract, Mountain State terminated Ms. Cook's benefits and refused to pay her expenses.  Thereafter, Mr. Jones represented to Ms. Cook that the notification of coverage termination was a mistake and/or misunderstanding.  In addition, he assured her that if the benefit coverage had lapsed, the company would pay all outstanding medical services rendered to the Cooks to the extent that Mountain State would have paid had the coverage not lapsed.

On December 16, 2003, Ms. Cook contacted the United States Department of Labor, Employee Benefits Security Administration (Department of Labor) and reported Jones & Jordan's failure to pay required premiums to Mountain State and Plaintiffs' resulting medical care debt.  An employee of the Department of Labor, Fathila Dosky, contacted Jones & Jordan regarding Ms. Cook's complaint.  Thereafter, Mr. Jones assured Ms. Dosky that the company would pay any medical debt incurred by Plaintiffs based on benefits they would have received under the Plan had it remained in effect.  In addition, Mr. Jones enlisted the help of Thomas Hannigan, an insurance agent, to help obtain the Cooks' medical bills so that Jones & Jordan could assess and pay them. After Mr. Hannigan withdrew from the process on August 11, 2004, Mr. Jones informed Ms. Dosky that he still required a release and waiver from her to communicate with providers and to pay any outstanding claims.  He also provided Ms. Dosky with a list of identified providers who required

payment for services rendered to Plaintiffs.  On October 7, 2004, the company asked Ms. Jones to execute another release permitting them to communicate with the Cooks' health care providers.

However, on January 20, 2005, some of the Cooks' payments remained outstanding, and Ms. Cook contacted Jones & Jordan, informing them that she was being contacted by creditors regarding the unpaid bills.  In addition on June 15, 2005, the Department of Labor recognized that some claims of the Plan participants remained outstanding.  In a letter, the Department of Labor notified Jones & Jordan that it "would remain in violation of ERISA until all outstanding medical claims have been settled." (Docket 106-6 at 19.)  Despite Jones & Jordan's alleged attempts to pay Plaintiffs' medical bills, some of the bills remain unpaid to this day.

Consequently, Plaintiffs filed an eleven-count complaint against Jones & Jordan on August 11, 2006, alleging ten counts of breach of fiduciary duty pursuant to various provisions of ERISA and one count of detrimental reliance.[3]   On March 15, 2007, Jones & Jordan moved to file a third-party complaint against Mountain State.  The Court granted the motion, ordered the third-party complaint filed on May 3, 2007, and permitted Jones & Jordan to amend its third-party complaint on July 16, 2007.

In its third-party complaint, Jones & Jordan alleges that the doctrines of "waiver and/or estoppel" prevent Mountain State from denying Plaintiffs' claims.  Specifically, Jones & Jordan allege that on an unspecified date, employees and representatives of Mountain State assured them that the policy insuring Plaintiffs would not be canceled for non-payment and that Mountain State would "work with" Jones & Jordan by accepting late and partial payments without jeopardizing

_____

[3]  This Court has jurisdiction over the issues arising under ERISA pursuant to 29 U.S.C. §1132 and supplemental jurisdiction over the detrimental reliance claim pursuant to 28 U.S.C. § 1367.

Plaintiffs' insurance coverage.  Based on Mountain State's assurances that it would continue health insurance coverage for Jones & Jordan's employees, Jones & Jordan asserts that Mr. Jones and Mr. Jordan did not utilize other assets in an effort to lend funds to their company to ensure coverage for Plaintiffs.  Additionally, Jones & Jordan contends that Mountain State terminated Plaintiffs' health insurance coverage simply because Plaintiffs filed a large claim.

On August 8, 2007, Mountain State filed a motion to dismiss the third-party complaint pursuant to Fed. R. Civ. P. 12(b)(6), and attached a copy of the group insurance coverage contract for Jones & Jordan as an exhibit.  Mountain State argued that the complaint was barred by the "contractual statute of limitations (SOL)" agreed to by Jones & Jordan and Mountain State.  Alternatively, Mountain State asserted that Third-Party Plaintiffs' claims of "waiver and/or estoppel" fail as a matter of law.

On March 3, 2008, this Court entered a Memorandum Opinion and Order [Docket 58] granting in part and denying in part Mountain State's motion to dismiss.  In that order, the Court granted the motion to dismiss the individual claims of Mr. Jones and Mr. Jordan and any claim by Third-Party Plaintiffs based on the doctrine of waiver.  However, the Court denied the motion as to Jones & Jordan's claim for estoppel and its claim based on the SOL defense.  With respect to the SOL defense, the Court noted that the parties agreed that a two-year SOL applied, but an issue still existed regarding whether "the third-party complaint sets forth on its face the facts necessary to conclude that Jones & Jordan's estoppel claim is barred by the two-year contractual limitations period."  (Docket 58 at 10.)  The Court concluded that "[a]ny argument that Jones & Jordan failed to bring a timely action is better reserved for a motion for summary judgment."  (*Id.* at 11.)

5

Mountain State filed its motion for summary judgment on October 6, 2008.  In its motion, Mountain State again argues that Jones & Jordan's claim is barred by the SOL and that Jones & Jordan cannot establish the elements of its estoppel claim.  Jones & Jordan responded on October 28, 2008, and Mountain State replied on November 6, 2008.  In addition, Plaintiffs filed a motion for summary judgment on October 14, 2008, to which Jones & Jordan responded on October 28, 2008, and Plaintiffs replied on November 7, 2008.  The issues have been fully briefed, and the matter is now ripe for the Court's consideration.

## II.  STANDARD OF REVIEW

Summary judgment is proper where the pleadings, depositions, and affidavits in the record show that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If there exist factual issues that properly can be resolved only by a trier of fact because they may reasonably be resolved in favor of either party, summary judgment is inappropriate.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986); *see also Pulliam Inv. Co., Inc. v. Cameo Props*., 810 F.2d 1282, 1286 (4th Cir. 1987).  The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Celotex Corp.*, 477 U.S. at 322-23.  When determining whether there is an issue for trial, the Court must view all evidence in the light most favorable to the non-moving party.  *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123 (4th Cir. 1990).  Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."  *Celotex*, 477 U.S. at 322.

6

### III. DISCUSSION

A.     Mountain State's Motion for Summary Judgment

Mountain State asserts that Jones & Jordan's third-party complaint is time barred, or, in the alternative, that Jones & Jordan cannot establish its claim of estoppel.  Mountain State claims that the period for bringing an action is two years based on the Group Contract entered into by the parties.  Furthermore, it claims that under a two-year SOL, Jones & Jordan failed to timely file its third-party complaint.  In support of its contention, Mountain State cites to the deposition transcripts of Mr. Jones and Mr. Jordan, (Docket 99-3), in which both admitted to having the coverage termination letter within a few days of August 15, 2003.  Therefore, Mountain State claims that because Jones & Jordan's third-party complaint was filed on March 15, 2007, it was more than seventeen months late.

Jones & Jordan contends that, as opposed to the two-year limitation provided in the Group Contract, the time within which it was permitted to bring a suit was contained in the Plaintiffs' benefits certificate entitled "Super Blue Plus 2000 Health Care Certificate" (Docket 106-3).  Jones & Jordan believes that under the provisions of that document, the SOL is four years.  (*Id.*)  In response to Jones & Jordan's contention, Mountain State asserts that "Jones & Jordan's claim . . . is that Mountain State should be estopped from canceling its *group contract*, and, thus, the limitations provision in that contract, not a benefits certificate, controls."  (Docket 114 at 2.)[4]

_____

[4] Mountain State also claims that even if the benefits certificate was controlling, that time period applies only for those seeking to recover benefits.  Mountain State asserts that Plaintiffs did not file an action against Mountain State or complete the requisite internal appeal process; thus, they did not seek to recover benefits from Mountain State as required under the benefits certificate.  In addition, Mountain State asserts that Jones & Jordan has not shown that its action is timely under the benefits certificate.  Because the Court will resolve this matter based on Mountain State's claim that the
(continued...)

In its Memorandum Opinion and Order [Docket 58] entered on March 3, 2008, this Court found that the two-year SOL provided in the Group Contract applies. Furthermore, Jones & Jordan's claim that the benefits certificate controls does not persuade the Court otherwise. As Mountain State contends, the action at hand is based on Plaintiff's allegations that Jones & Jordan breached its fiduciary duty to Plaintiffs regarding their benefits plan, which is embodied in the Group Contract. In addition, Jones & Jordan's third-party complaint raises estoppel issues regarding the Group Contract. Therefore, it is clear that the present action arises under the Group Contract.[5]

In its earlier memorandum opinion and order, the Court denied Mountain State's motion to dismiss pursuant to the SOL because Mountain State's third-party complaint did not indicate when Jones & Jordan would have been aware that coverage had been terminated. However, Mountain State attached the deposition transcripts of both Mr. Jones and Mr. Jordan to its motion for summary judgment, both of which demonstrated that Jones & Jordan was aware of coverage termination within a few days of August 15, 2003. Therefore, Mountain State has met its burden of showing that no issue of material fact exists regarding its SOL claim and that Jones & Jordan failed to file its third-party complaint within the two-year window provided by the Group Contract. Therefore, the Court **GRANTS** Mountain State's motion for summary judgment with respect to its SOL claim.[6]

---

[4](...continued)
Group Contract controls, it will not address Mountain State's additional arguments.

[5] The Group Contract states that "[a]ny action resulting from this Agreement brought against MSBCBS must commence within two (2) years after the occurrence of the event giving rise to the action." (Docket 30-2 at 9.)

[6] Because the Court has granted Mountain State's motion for summary judgment based on the SOL, it declines to reach the merits of Mountain State's estoppel argument.

B.      *Plaintiffs' Motion for Summary Judgment*

Plaintiffs claim that the facts necessary to prove each element of their claims are undisputed. However, Jones & Jordan assert that there are genuine issues of material fact in this case: (1) the amount  of sums owed, if any; (2) the amount of sums withheld from Cook's pay and not used for insurance premiums; (3) whether Jones & Jordan acted intentionally, wilfully, and with callous disregard for Plaintiffs; and (4) whether Jones & Jordan justifiably relied upon the representations of Mountain State.  Plaintiff's reply states that Jones & Jordan knows the amount of the sums owed, and Plaintiffs submit therewith a list of their outstanding medical bills.[7]

Ten of Plaintiffs' eleven claims arise under ERISA. Congress enacted ERISA in 1974 to "assur[e] the equitable character of [employee benefit plans] and their financial soundness," and "to protect . . . the interests of participants in employee benefits plans and their beneficiaries" 29 U .S.C. § 1001.  To achieve its objective, ERISA, "set[s] forth certain general fiduciary duties applicable to the management of both pension and non-pension benefit plans." *Varity Corp. v. Howe*, 516 U.S. 489, 496 (1996).  In particular, "ERISA has a complex and detailed statutory framework that sets forth the standards governing the conduct of fiduciaries who have discretionary authority over such benefit plans, and the statutory scheme includes rules barring a fiduciary from engaging in certain types of transactions."  *Wilson v. Perry*,  470 F. Supp. 2d 610, 618 (E.D.Va. 2007) (citing *Chao v. Malkani*, 452 F.3d 290, 293-94 (4th Cir. 2006).  "The remedial nature of ERISA as a whole dictates

---

[7]  Jones & Jordan filed a motion for leave to filed a sur-reply to Plaintiffs' motion for summary judgment, claiming that Plaintiffs' reply "contained new information and contentions [regarding damages] outside the scope of their original Motion for Summary Judgment."  (Docket 120 at 1.) The Court **FINDS** that damages have not been sufficiently developed at this point, and summary judgment is **DENIED** with respect to damages.  Therefore, Jones & Jordan Engineering, Inc., James A. Jones and Kevin W. Jordans' Motion for Leave to File a Sur-reply to Plaintiffs' Motion for Summary Judgment [Docket  120] is **DENIED AS MOOT**.

that it should be liberally construed to protect participants in employee benefit plans." *Connors v. Paybra Min. Co.*, 807 F. Supp. 1242, 1245 (S.D. W.Va. 1992) (Haden, C.J.) (citing *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 123 (4th Cir.1991)).

Plaintiff's ERISA claims allege violations of Jones & Jordan's fiduciary duty. "To establish fiduciary liability under ERISA, the Plaintiffs must first show that the individual Defendants meet the fiduciary definition of § 1002(21)(A) . . . [and] that the putative fiduciary breached his or her fiduciary duty as to the plan assets." *Connors*, 807 F. Supp. at 1246. As defined by ERISA,

> [e]xcept as otherwise provided in subparagraph (B),[8] a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A).

---

[8] Subparagraph B provides that

> [i]f any money or other property of an employee benefit plan is invested in securities issued by an investment company registered under the Investment Company Act of 1940 [15 U.S.C.A. § 80a-1 et seq.], such investment shall not by itself cause such investment company or such investment company's investment adviser or principal underwriter to be deemed to be a fiduciary or a party in interest as those terms are defined in this subchapter, except insofar as such investment company or its investment adviser or principal underwriter acts in connection with an employee benefit plan covering employees of the investment company, the investment adviser, or its principal underwriter. Nothing contained in this subparagraph shall limit the duties imposed on such investment company, investment adviser, or principal underwriter by any other law.

29 U.S.C. § 1002(21)(B). This exception is inapplicable in the case at hand.

First, its is undisputed that Jones & Jordan Engineering, Inc., Mr. Jones, and Mr. Jordan had discretionary responsibility regarding the payment of premiums for the Plan.  *See Connors*, 807 F. Supp. at 1247 (holding "that once an officer's status under § 1002(21)(A) is established, personal liability attaches")(citations omitted). Therefore, the Court **FINDS** each defendant is a fiduciary as defined in ERISA.[9]  Secondly, Plaintiffs allege ten counts of breach of fiduciary duty under ERISA and on one count of detrimental reliance.  The Court will address each in turn.

*(1)      Breach of Fiduciary Duty of Loyalty*

In Count One, Plaintiffs assert that Jones & Jordan violated ERISA section 404(a)(1)(A) when it breached its fiduciary duty by commingling Plaintiffs' premium contributions with the general assets of the company.  Under section 404(a)(1)(A), a fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) deferring reasonable expenses of administering the Plan." 29 U.S.C. §1104 (a)(1)(A).  This Court agrees with the Seventh Circuit which held, "Deliberately favoring the corporate treasury when administering . . . a plan is inconsistent with [ERISA section 404(a)(1)(A)]." *Frahm v. Equitable Life Assur. Soc'y. of the United States*, 137 F.3d 955, 959 (7th Cir. 1998).

As Plaintiffs assert, it is undisputed that Jones & Jordan collected premium contributions from Ms. Cook and commingled the contributions with the general assets of the company for the benefit of the company.  In support of their contention, Plaintiffs cite to the deposition of Mr. Jones. (Docket 106-2.)  Mr. Jones stated that between May 1, 2003, and October 1, 2003, Jones & Jordan

---

[9] The Court also notes that the parties do not contest that each defendant was a fiduciary as defined in ERISA.

11

deducted health insurance premium payments from Ms. Cook's paychecks.  (*Id.* at 35-7.)  In addition, Mr. Jones admitted that, at some points in 2003, Jones & Jordan did not make premium payments under the Plan.  (*Id.* at 48.)   Mr. Jones stated that rather than pay premiums, Jones & Jordan elected to give payroll primacy.  (*Id.* at 61.)

The evidence in the record, and in particular the stipulations of fact, establish that there is no genuine issue of material fact regarding this claim.  It is clear that by using Ms. Cook's premium contributions to pay the company's general operating expenses, Jones & Jordan deliberately favored its corporate treasury at Plaintiffs' expense and breached its duty of loyalty to Plaintiffs required under ERISA.  As such, summary judgment is **GRANTED** on Plaintiffs' section 404(a)(1)(A) claim raised in Count One.

### (2)   Breach of Fiduciary Duty of Care

In Count Two, Plaintiffs assert that Jones & Jordan breached its duty of care pursuant to ERISA section 404(a)(1)(B), which states that "a fiduciary shall discharge his duties . . . with care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).  Plaintiffs claim that it is undisputed that "Defendant company, and Jones and Jordan, individually[,] intentionally, willfully and with callous disregard for the Plaintiffs, chose not to segregate employee/participant premium contributions from the company's general assets and intentionally withheld said contributions from the Plan." (Docket 107 at 18.)

Section 404(a)(1)(B) requires a fiduciary to act as a "prudent man."  A fiduciary who has failed to pay health insurance premiums and to inform employees of a lapse in their insurance

12

coverage has not acted as a prudent man in like circumstances but rather has violated its duty of care. *See Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 471 (7th Cir.1997). Because it is undisputed that Jones & Jordan failed to pay Plaintiffs' insurance premiums or to notify Plaintiffs of the lapse in coverage, no issue of fact exists. Therefore, Plaintiffs' motion for summary judgment on its section 404(a)(1)(B) claim raised in Count Two is **GRANTED**.

*(3)     Breach of Fiduciary Duty by Using Plan Assets for Own Benefit*

In Count Three, Plaintiffs claim that Jones & Jordan used Plan assets, in the form of Plaintiffs' premium contributions for their own benefit. Section 406(a)(1)(D) of ERISA provides that "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." 29 U.S.C. § 1006(a)(1)(D). A "party in interest" is defined as, among other things, "any fiduciary (including, but not limited to, any administrator, officer, trustee, or custodian), counsel, or employee of such plan." 29 U.S.C. § 1002(14).

It is undisputed that Jones & Jordan used Ms. Cook's and other employees' premium contributions to pay its operating expenses. Also, there is no question that this practice was for the benefit of Jones & Jordan. As established above, Jones & Jordan is clearly a fiduciary, and, therefore, for purposes of this section, a "party in interest." Thus, Jones & Jordan caused the Plan to engage in a transaction that it knew would benefit a party in interest, namely itself. There appears to be no issue of fact on this point. As such, summary judgment is **GRANTED** on Plaintiffs' section 406(a)(1)(D) claim raised in Count Three.

13

*(4)      Breach of Fiduciary Duty by Engaging in Self Dealing*

In Count Four, Plaintiffs contend that individually, Mr. Jones and Mr. Jordan violated section 406(b) of ERISA by using Plaintiffs' premium payments for the general operating expenses of their company, which was to their personal benefit.  Section 406(b)(1) prohibits, among other things, a fiduciary from "deal[ing] with the assets of the Plan in his own interests or for his own account." 29 U.S.C. § 1106(b)(1).  Cases in other jurisdictions provide that a shareholder of a corporation engages in self dealing in violation of section 406(b)(1) by using plan assets to pay corporate expenses.  *See e.g.*, *Prof'l Helicopter Pilots Ass'n v. Denison*, 804 F. Supp. 1447, 1452-54 (M.D. Ala. 1992).

Plaintiffs claim that individually Mr. Jones and Mr. Jordan engaged in self-dealing in violation of section 406(b)(1).  Plaintiffs allege that "Defendants [Mr.] Jones and [Mr.] Jordan intentionally, fraudulently, and with deliberate disregard for the Plaintiffs withheld employee contributions and required premiums for the Plan and, instead used said monies to pay the company's operating expenses, and for the personal benefit and interest of [Mr.] Jones and [Mr.] Jordan."  (Docket 107 at 20.)  Again, it is undisputed that Plaintiffs' premiums were used to pay the company's operating expenses.  In addition, the Court is in agreement with the court in *Prof'l Helicopter* that by using the Plan's assets to pay their corporation's expenses, Mr. Jones and Mr. Jordan engaged in self-dealing.  Therefore, the Court **GRANTS** Plaintiffs' motion for summary judgment on its section 406(b)(1) claim raised in Count Four.

*(5)      Breach of Fiduciary Duty by Acting on Behalf of a Party with Adverse Interests to the Plan*

In Count Five, Plaintiffs allege that by using the Plan's assets to fund payroll, Mr. Jones and Mr. Jordan violated ERISA section 406(b)(2)'s prohibition against fiduciaries acting in on behalf

14

of an adverse party.  Specifically,  ERISA section 406(b)(2) states that "[a] fiduciary with respect to a plan shall not . . . in his individual or in any other capacity act in any transaction involving the plan on behalf of a party . . . whose interests are adverse to the interests of the plan or its participants or beneficiaries . . ."  29 U.S.C. § 1106(b)(2).  To support their allegation, Plaintiffs cite to a Fifth Circuit case that states, "[w]e regard '(acting) on behalf of a party' to encompass acting on behalf of oneself " for purposes of section 406(b)(2).  *Iron Workers Local # 272 v. Bowen*, 624 F.2d 1255, 1261 (5th Cir. 1980).  In that case, the court determined that a defendant board member who actively participated in a decision that resulted in the insurance plan not suing acted in an interest adverse to the plan and its beneficiaries.  *Id.*

The Fourth Circuit has yet to decide whether § 406(b)(2)'s prohibition requires a third party or whether it can be applied to the fiduciary himself.  However, this Court finds the reasoning of the Fifth Circuit persuasive.   As noted above, the provisions of ERISA should be liberally construed in favor of protecting participants in employee benefit plans.  *Teamsters*, 947 F.2d at 123.  Thus, construing section 406(b)(2) liberally, the Court **FINDS** that a "party whose interests are adverse to the interests of the plan" can also be the fiduciary of the plan.  It is clear that Mr. Jones and Mr. Jordan's interest in funding payroll with assets of the Plan was adverse to the Plan and its beneficiaries.  Therefore, no issue of fact exists, and the Court **GRANTS** Plaintiffs' summary judgment motion against Mr. Jones and Mr. Jordan on their section 406(b)(2) claim raised in Count Five.

### (6)   Breach of Fiduciary Duty for Failure to Hold Plan Assets in Trust

In Count Six, Plaintiffs assert that based on the commingling of funds established above, Jones & Jordan violated ERISA Sections 403(a) and 403(c)(1).  Section 403(a) states that subject

to exceptions provided in section 403(b), "all assets of an employee benefit plan shall be held in trust by one or more trustees." 29 U.S.C. § 1103(a).  Section 403(c)(1) provides that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan."  29 U.S.C. § 1103(c)(1).  Based on its commingling of funds, Jones & Jordan violated Sections 403(a) and 403(c)(1), there is no issue of fact on this claim, and summary judgment is **GRANTED** with respect to those claims raised in Count Six.

### (7)    *Violation of Co-fiduciary Duty*

In Count Seven, Plaintiffs contend that Mr. Jones and Mr. Jordan "knowingly and significantly deceived Ms. Cook in order to save the company money at her and Kevin Cooks [sic] expense, and did not act solely in the interest of the participants and beneficiaries as required, all in breach of their fiduciary duties and in violation of ERISA Sections 405(a), 405(a)(1), 405(a)(2), 405(a)(3), 404(a)."  (Docket 107 at 23.)  ERISA section 405(a) states

> In addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
>
> (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105.

With respect to this claim, Plaintiffs argue that "Defendant Jones [&] Jordan knowingly, willfully, and in total disregard for the Plaintiffs, deliberately withheld employee/participant premium contributions from the Plan, and used said Plan assets for the benefit of the company and [Mr.] Jones and [Mr.] Jordan, personally."  (Docket 107 at 23.)  Plaintiffs also argue that "Defendants [Mr.] Jones and [Mr.] Jordan concealed their conduct through blatant and false representations to Ms. Cook, and others and made no reasonable efforts to remedy the conduct." As mentioned above, the Court has found that Mr. Jones and Mr. Jordan each breached their fiduciary duties under ERISA by commingling premium contributions.  Thus, to that extent, they are liable as co-fiduciaries for the breach made by one another.

However, the Plaintiffs have not produced sufficient evidence to support their claim that Jones & Jordan concealed its conduct or made no efforts to remedy its conduct, and an issue of material fact remains pertaining to those allegations.  Therefore the Court **GRANTS** summary judgment in favor of the Plaintiffs on their section 405(a) claim raised in Count Seven only to the extent that it applies to Mr. Jones and Mr. Jordan breaching their co-fiduciary duties by permitting each other to co-mingle Plan contributions.

*(8)    Violation of Fiduciary Duty to Inform*

In Count Eight, Plaintiffs allege that Jones & Jordan violated ERISA Sections 102 and 104 by "failing to inform Plan participants of any circumstances that could affect the benefits available under the Plan." (Docket 107 at 23.)  Section 102(a) states, in part, "A summary of any material modification in the terms of the plan and any change in the information required under subsection (b) of this section shall be written in a manner calculated to be understood by the average plan participant and shall be  furnished in accordance with section 1024(b)(1) of this title."  29 U.S.C.

17

§ 1022(a).  Section 102(b) requires the plan description to contain "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits."  29 U.S.C. § 1022(b).

It is undisputed that Jones & Jordan failed to provide Plaintiffs with an update to the summary plan description that included its failure to pay premiums, which constitutes "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." Therefore, summary judgment is **GRANTED** with respect to Plaintiffs' Sections 102 and 104 claims raised in Count Eight.

> *(9)    Breach of Fiduciary Duty of Loyalty and Care with Respect to Representations Made to Plaintiffs*

In Count Nine of their complaint, Plaintiffs allege additional violations of ERISA Sections 404(a)(1)(A) and 404(a)(1)(B).  Plaintiffs contend that in addition to breaching these provisions by commingling Plan funds, Jones & Jordan also breached these provisions by falsely representing that it would pay Plaintiffs' medical debts incurred during the period that their coverage lapsed. Plaintiffs allege that "[d]espite having possession of a fully executed release and with all requisite information to pay any outstanding invoices due and owing, the Defendants willfully, knowingly, and in total disregard for their contractual obligations and Plaintiffs [sic] interest, destroyed, or otherwise discarded, the relevant invoices and have refused to satisfy any such obligations." (Docket 107 at 24.)

The Court declines to address whether these allegations, if true, would constitute a breach of ERISA Sections 404(a)(1)(A) and 404(a)(1)(B) because material issues of fact exist with respect to this claim.  As mentioned above, Plaintiffs have not produced sufficient evidence to support their claim that Jones & Jordan has not attempted to satisfy its obligations.  In fact, Jones & Jordan asserts that it has "engaged in various efforts to rectify this situation," (Docket 111 at 3), including paying

18

"many of the bills which went uncovered during the period from May 1, 2003, to October 1, 2003" (*Id.* at 5). Thus, whether Jones & Jordan falsely represented that it would pay Plaintiffs' medical bills is a disputed material question of fact.

Furthermore, though Plaintiffs assert that Jones & Jordan acted "in total disregard for their contractual obligations," (Docket 107 at 24), Plaintiffs allege no facts to demonstrate that a contract regarding payment of medical bills existed or that such contract was breached. Therefore, because material issues of fact exist regarding this claim, Plaintiffs' motion for summary judgment on Count Nine is **DENIED**.

> (10)     *Breach of Fiduciary Duty of Loyalty and Care by Feigning Cooperation with the Department of Labor*

Again, Plaintiffs claim violations of ERISA Sections 404(a)(1)(A) and 404(a)(1)(B) in Count Ten. Plaintiffs assert that "[i]n an effort to avoid their fiduciary obligations and retain the spoils of their blatant fiduciary breaches . . . [Mr.] Jones and [Mr.] Jordan feigned cooperation with the Department of Labor investigation and developed a scheme to perpetuate their fraudulent activities." (Docket 107 at 25.) However, once more, Plaintiffs seek summary judgment on an claim that contains disputed issues of material fact. Plaintiffs have offered no proof that Jones & Jordan feigned cooperation with the Department of Labor. Conversely, Jones & Jordan contends that it has attempted to cooperate with the Department of Labor. Therefore, the Court **DENIES** Plaintiffs' motion for summary judgment with respect Count Ten.

> (11)     *Detrimental Reliance*

It is unclear whether Plaintiffs have requested summary judgment on their Count Eleven claim for detrimental reliance. Plaintiffs appear to claim that the requisite promise for detrimental reliance was a misrepresentation by Jones & Jordan regarding Plaintiffs' insurance coverage.

Plaintiffs state, "Defendants, in their capacities as representatives and agents of Jones & Jordan . . . intentionally and knowingly misled Plaintiff about the status of her insurance coverage during the relevant period, misrepresenting and, [sic] concealing the fact that employee/participant (and her) premium contributions were not being remitted to the Plan."  (Docket 107 at 27.)  In addition, Plaintiffs cite to applicable law regarding detrimental reliance.  (Docket 107 at 26.)  However, Plaintiffs do not allege any particular action that they took was induced by a promise made by Jones & Jordan.  Instead, Plaintiffs merely allege "Plaintiffs did rely to their detriment upon Defendants' representations, and suffered the significant consequence and humiliation of collection and court action against them."  (*Id.*)  In short, even if Plaintiffs are requesting summary judgment on this claim, it has been inadequately briefed, and Plaintiffs have failed to present evidence sufficient to support a claim for detrimental reliance.  Therefore Court **DENIES** Plaintiff's motion for summary judgment on Count Eleven.

    C.    *Damages*

    The briefing with regard to damages to date is insufficient for the Court to determine damages without further input from counsel.

*IV.  CONCLUSION*

    For the reasons stated above, the Motion for Summary Judgment by Third-Party Defendant, Mountain State Blue Cross & Blue Shield, Inc. [Docket 99] is **GRANTED**, and Defendant/Third-Party Plaintiffs, Jones & Jordan Engineering, Inc., James A. Jones, and Kevin W. Jordan's Motion for Leave to File a Sur-reply to Plaintiffs' Motion for Summary Judgment, [Docket 120] is **DENIED**.  Plaintiffs' Motion for Summary Judgment [ Docket 106] is **GRANTED IN PART AND DENIED IN PART**.  Specifically, Plaintiff's Motion for Summary Judgment on Counts One

through Six and Count Eight is **GRANTED** as to liability.  Plaintiff's Motion for Summary Judgment on Count Seven is **GRANTED** as to liability only to the extent that it applies to Defendants' commingling premium contributions of the Plan, but Plaintiffs' motion is otherwise denied as to Count Seven.  Insofar as the motion requests summary judgment on counts nine though eleven and for damages, the motion is **DENIED.**  The Amended Third-Party Complaint of Jones & Jordan Engineering, Inc., James A. Jones and Kevin W. Jordan [Docket 27] is **DISMISSED**, and the Third-Party Defendant, Mountain State Blue Cross & Blue Shield, Inc. is **DISMISSED** as a party to this action. A separate Judgment Order will enter this day implementing the rulings contained herein.

      **IT IS SO ORDERED.**

      The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

                           ENTER:       January 7, 2009

                           THOMAS E. JOHNSTON
                           UNITED STATES DISTRICT JUDGE