IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

ROBIN D. COOK and
KEVIN COOK,

                    Plaintiffs,

v.                                                      CIVIL ACTION NO.  5:06-cv-00627

JONES & JORDAN ENGINEERING, INC., et al.,

                    Defendants.


MEMORANDUM OPINION AND ORDER

        This action involves a dispute arising under the Employee Retirement Income Security Act

of 1974, 29 U.S.C. § 1001, *et. seq.* (ERISA).  Although the parties have informed the Court that all

other claims and issues in the case have been resolved, still pending before the Court is Plaintiffs'

Petition for Attorneys' Fees [Docket 161].   For the reasons set forth below, the Petition is

**GRANTED IN PART AND DENIED IN PART**.

*I.  BACKGROUND*

        On June 14, 2009, Robin D. Cook and Kevin Cook ("Plaintiffs") and Jones & Jordan

Engineering, Inc., James A. Jones, and Kevin W. Jordan, (collectively referred to as "Defendants")

filed an Agreed Motion to Cancel Trial and Submission of Petition for Attorney Fees, Costs and

Expenses (Docket 159).  The Court granted this motion and ordered Plaintiffs' counsel to submit

a petition for attorney fees, costs, and expenses (Docket 160).  Plaintiffs submitted their Petition for

Attorneys' Fees [Docket 161] on August 3, 2009, to which Defendants responded on August 17,

2009, and Plaintiffs replied on August 27, 2009.  The Court then held a hearing on Plaintiffs'

Petition for Attorneys' Fees on August 31, 2009, and ordered the parties to submit briefs addressing

the standard for determining the amount of attorneys' fees awarded in an ERISA case.  The parties'

supplemental memoranda on that issue, (Docket 168 and 169), were each filed on September 8,

2009.

## II.  DISCUSSION

### A.     Award of Attorneys' Fees

ERISA provides for an award of reasonable attorneys' fees and costs to "either party."  29

U.S.C. § 1132(g).  However, the Fourth Circuit held that "only a prevailing party is entitled to

consideration for attorneys' fees in an ERISA action." *Martin v. Blue Cross & Blue Shield of Va.,*

*Inc.*, 115 F.3d 1201, 1210 (4th Cir. 1997).  The Fourth Circuit has not specifically spelled out the

definition of a prevailing party in an ERISA case, but the Supreme Court has provided guidance in

other federal fee-shifting statutes.  A prevailing party is one who is awarded some relief by the court.

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.,* 532 U.S. 598, 603

(2001).  A party who is granted summary judgment can be considered a prevailing party.  *Clark v.*

*Metro. Life Ins. Co.*, 384 F. Supp. 2d 894, 897 (E.D. Va. 2005).  Here, Plaintiffs are a prevailing

party because they were awarded summary judgment on seven counts of their complaint, prompting

Defendants to pay Plaintiffs' remaining medical expenses.

ERISA places the determination of whether to award attorneys' fees  within the discretion

of the district court.     *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1028-29 (4th Cir.

1993).  In exercising its discretion, the Court must consider the following five factors:

(1) degree of opposing parties' culpability or bad faith;
(2) ability of opposing parties to satisfy an award of attorneys' fees;

2

(3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;
(4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA iteslf; and
(5) the relative merits of the parties' positions.

*Id.* at 1029. "This five factor approach is not a rigid test, but rather provides general guidelines for the district court in determining whether to grant a request for attorneys' fees." *Id.*

Under the first factor, the Court must determine whether the defendants acted with the requisite culpability or in bad faith. This factor requires more than "mere negligence or error." *Carolina Care Plan Inc. v. McKenzie*, 467 F.3d 383 (4th Cir. 2006). Here, Defendants failed to pay health insurance premiums to Mountain State Blue Cross & Blue Shield, Inc. ("Mountain State"), the plan provider, for their employees. From May 1, 2003, through October 1, 2003, Jones & Jordan Engineering, Inc. ("Jones & Jordan") deducted premium payments from Plaintiff Robin D. Cook's pay, but did not tender those premium contributions to Mountain State when payments became due. Then in August 2003, Mountain State advised Jones & Jordan that it was terminating employee coverage. The termination was made retroactive to May 1, 2003—the month Jones & Jordan stopped making payments to Mountain State. Jones & Jordan and the individual defendants, James A. Jones ("Mr. Jones") and Kevin W. Jordan ("Mr. Jordan"), rather implausibly alleged that they had an oral agreement with Mountain State that Jones & Jordan would still be covered.

During the period when the Mountain State coverage was terminated, Ms. Cook and her family incurred significant medical expenses. When Mountain State refused to cover those expenses, Mr. Jones represented to Ms. Cook that the notification of coverage termination was a mistake or misunderstanding. So, not only did Jones & Jordan let its premium payments lapse, it also failed to communicate this fact to its employees. Taken together, Jones & Jordan's actions

3

constitute more than mere negligence, and approach bad faith because Jones & Jordan knowingly did not pay the premiums and then misrepresented the situation to its employees.  Thus, the first factor weighs in favor of awarding fees.

The second factor is the ability for the opposing party to satisfy an award of attorneys' fees. The parties' treatment of this issue is somewhere between scant and incomplete.  Even though there has been some evidence presented that Jones & Jordan has experienced financial difficulties, there is also some evidence that they could eventually satisfy an award.  Jones & Jordan continue to operate as a business entity and have not filed for bankruptcy protection.  They were able to pay the medical expenses of Plaintiffs.  Plaintiffs allege that Jones & Jordan and its principles have other assets and ventures, but again, the Court has only been given a small portion of the overall picture. Nonetheless, this factor leans a bit toward an award.

The third factor is met because an award of attorneys' fees in this case would tend to deter other employers from acting as Jones & Jordan did.  An award here should put other employers on notice of the repercussions of letting insurance coverage lapse, and will encourage Jones & Jordan and other employers to be more vigilant in guarding against lapses and more straightforward when dealing with employees and insurance companies on these important issues.

The fourth factor weighs against an award of fees because Ms. Cook is suing as an individual.  However, fees can still be awarded when a plaintiff brings suit primarily to benefit an individual.  *McKenzie*, 467 F.3d at 390.  In addition, "[n]o one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address in applying [§1132(g)]."  *Quesinberry*, 987 F.2d at 1029.

The fifth factor, the relative merits of the parties' positions, weighs in favor of an award because the Defendants' position essentially had no merit. Defendants acknowledged that they were wrong to let insurance lapse for their employees. Defendants gave in when Plaintiffs were granted partial summary judgment, and subsequently satisfied all of Plaintiffs' outstanding medical expenses. Indeed, they now contend that they acknowledged the responsibility to cover Plaintiffs' medical bills from the beginning, although one is left to wonder why it then required litigation through the point of summary judgment and a number of years for full payment to occur.

After examining the *Quesinberry* factors, the Court finds that all of the factors except the fourth weigh in favor of awarding attorneys' fees. Accordingly, Mr. Russo is entitled to attorneys' fees and costs under ERISA.

>    B.    *Amount of Attorneys' Fees*

Once a court determines that attorneys' fees will be awarded, it must then determine the amount to be awarded. To do this, the Court calculates a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate while applying factors adopted in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978). *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 356 (4th Cir. 2009); *Grissom v. Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008); *Barber* at F.2d 226 (4th Cir. 1978) (adopting test set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). The following twelve *Barber* factors are used to determine a reasonable attorneys' fee award:

>    (1)    the time and labor expended;
>    (2)    the novelty and difficulty of the questions raised;
>    (3)    the skill required to properly perform the legal services rendered;
>    (4)    the attorney's opportunity costs in pressing the instant litigation;
>    (5)    the customary fee for like work;
>    (6)    the attorney's expectations at the outset of the litigation;

5

(7)    the time limitations imposed by the client or circumstances;

(8)    the amount in controversy and the results obtained;

(9)    the experience, reputation and ability of the attorney;

(10)   the undesirability of the case within the legal community in which the suit arose;

(11)   the nature and length of the professional relationship between attorney and client; and

(12)   attorneys' fees awards in similar cases.

*Barber*, 577 F.2d at 226.

Here, counsel for Plaintiffs requests $234,317.50 in attorneys' fees. This figure is the sum of the work for several individuals who worked on the case for Plaintiffs: $196,225.00 for Mr. Russo; $28,980.00 for Ms. Schoolcraft, a paralegal; $4,867.50[1] for Mr. Joseph Price, an attorney; $3,672.00[2] for Mr. Benjamin Price, an attorney; $495.00[3] for Mr. Grigoraci, an attorney; and $78.00[4] for Ms. Aldridge, a librarian.

The Court will not award fees for the librarian. Also, the Court will not award fees for the attorneys other than Mr. Russo. The work of Mr. Joseph Price, Mr. Benjamin Price,[5] and Mr. Grigoraci appears to have been genuinely incidental to the litigation of this case and will therefore not be part of an award. *See Cox v. Reliance Standard Ins. Co.*, 179 F. Supp. 2d 630, 636 (E.D. Va. 2001).

---

[1] Based on 16.5 hours worked at a rate of $295.00/hour.

[2] Based on 27.2 hours worked at a rate of $135.00/hour.

[3] Based on 3.0 hours worked at a rate of $165.00/hour.

[4] Based on 1.3 hours worked at a rate of $60.00/hour.

[5] At first glance, it might not seem like Mr. Benjamin Price's work was incidental because he billed the most hours of the three other attorneys at 27.2. However, a great majority of his time was spent researching the amount of damages that can be obtained in an ERISA case. The amount of time he spent researching this issue is relatively small compared to the time Mr. Russo claims for doing largely the same thing, and Mr. Benjamin Price's time will therefore be treated as incidental.

6

The Court has considered all applicable factors in determining the amount to be awarded, and each will be discussed below.[6]

### (1)    The Time and Labor Expended

Mr. Russo submitted an itemized bill of hours worked for himself, a paralegal, Ms. Schoolcraft, and three other attorneys.  The Court reviewed the hours for Mr. Russo and Ms. Schoolcraft in the bill and divided it into litigation stages, then adjusted the number of hours billed to an amount that the Court considered reasonable for the particular task.  The adjusted amount of hours was then used to calculate the lodestar amount.  An across-the-board percentage was not used to reduce the hours, but the Court meticulously combed through Mr. Russo's bill and reduced hours billed in certain litigation stages to a more reasonable amount.  The adjusted amount of hours was then multiplied by the rates set forth in Mr. Russo's affidavit, which the Court finds to be reasonable.

### (2)    The Novelty and Difficulty of the Questions Raised

This case was fundamentally a claim for medical expenses under an ERISA plan.  The amount and types of damages, as well as Defendants' efforts to bring Mountain State into the case, were certainly significant issues that required counsel's time and attention.  However, these issues were neither novel nor particularly difficult, in the Court's view based on the record.  Further, the greatest complication in the case as suggested by both sides, was the mere quantification of Plaintiffs' medical bills.

---

[6] The Court will not comment on the following factors either because evidence was not presented or the parties have not addressed them: the attorney's expectations at the outset of the litigation, the time limitations imposed by the client or circumstances, the nature and length of the professional relationship between attorney and client, and attorneys' fees awards in similar cases.

(3)     *The Skill Required to Properly Perform the Legal Services Rendered and The Experience, Reputation and Ability of the Attorney*

This case is an ERISA case and required a competent ERISA attorney, but not an extremely advanced skill level to litigate.  Mr. Russo's affidavit indicates that he specializes in the area of labor and employment law ligation with an emphasis on ERISA matters.  It is the Court's belief that Mr. Russo is an experienced attorney who enjoys an excellent reputation in his field.  Thus, Mr. Russo is entitled to the normal rate that he charges other clients for legal services in calculating an attorney's fee award in this case.

(4)     *The Attorney's Opportunity Costs in Pressing the Instant Litigation*

Mr. Russo states in his affidavit that as a result of representing Plaintiffs in this case, he refused representation in other legal matters, which would have been billed at his normal rate. (Docket 161-1.)  This factor is not otherwise addressed by the parties.

(5)     *The Customary Fee for Like Work*

Unlike civil rights cases, no particular standard is used to calculate the customary fee in an ERISA case.  In civil rights cases, a fee award is calculated using the prevailing market rate, and the party requesting attorneys' fees must establish the reasonableness of the rate by producing some evidence of the market rate.  *Blum v. Stenson*, 465 U.S. 886, 895–96 (1984).  Mr. Russo submitted his own affidavit and the affidavits of two other attorneys who customarily practice in the Southern District of West Virginia.  Those attorneys indicated that they would charge the same rate that Mr. Russo charged or higher for this type of case, and Defendants did not object to Mr. Russo's rates.

Mr. Russo indicated during the motion hearing that he and his clients have some variety of contingent fee agreement for this case.  The Court did not inquire further into this matter, and would

8

note only that standard contingent fee arrangements would provide fees in this case that would be a tiny fraction of the amount of attorneys' fees claimed.

(6)     <em>The Amount In Controversy and the Results Obtained</em>

The parties disagree somewhat about the amount awarded to Plaintiffs and how much would have been paid for Plaintiffs' medical expenses if Jones & Jordan had maintained insurance coverage.  However, Defendants state that they paid $23,868.96 in satisfaction of Plaintiffs' expenses, (Docket 169), and both parties are in agreement that all claims have been paid except attorneys' fees and costs, (Docket 159).  Despite the disagreement about the amount of Plaintiffs' medical expenses, Mr. Russo was able to obtain a successful result for his clients—Plaintiffs were granted summary judgment on seven of eleven counts, which prompted Defendants to satisfy all of the claims owed to Plaintiffs' medical providers.

(7)     <em>The Undesirability of the Case Within the Legal Community in Which the Suit Arose</em>

Affidavits of other attorneys submitted by Plaintiffs' counsel in support of the fee petition indicated that few attorneys in West Virginia are willing to represent plaintiffs in ERISA matters because of the vast amount of time and resources involved that do not result in substantial monetary awards or the possibility of future representation.  Defendants submitted no evidence contradicting these statements.

9

Based on an analysis of all applicable factors, the Court awards attorneys' fees for Mr. Russo as follows: $77,975.50 for Mr. Russo's work[7] and $18,065.00 for Ms. Schoolcraft's work,[8] for a total of $96,040.50.

Obviously, these numbers are significantly lower than the amounts claimed by Plaintiffs' counsel. However, following detailed review of the time spent by Mr. Russo and Ms. Schoolcraft on various tasks, the Court has concluded that portions of the time attributed to some of the work was excessive. In particular, the amount of time spent on discovery, including deposition preparation, and preparation for and attending conferences was far more than would normally be expected and unsupported by any plausible justification for such large expenditures of time. Mr. Russo billed approximately 484.9 hours for discovery related matters, but the Court awarded only 149 hours. In addition, the Court reduced the amount of hours for mediation and research on damages in an ERISA case. For mediation, Mr. Russo billed 49.4 hours, and the Court awarded time for only 15.4 of those hours. For issues relating to damages, Mr. Russo billed 92.1 hours, and the Court reduced this to 24 hours.[9]

---

[7] Based on the reduced hours that the Court determined were reasonable: 0.5 hours worked in 2006 at a rate of $225/hour, 74.2 hours worked in 2007 at a rate of $235/hour, 140.6 hours worked in 2008 at a rate of $260/hour, and 86.8 hours worked in 2009 at a rate of $275/hour.

[8] Based on the reduced hours that the Court determined were reasonable: 2.8 hours worked in 2006 at a rate of $95/hour, 30.1 hours worked in 2007 at a rate of $100/hour, 68.6 hours worked in 2008 at a rate of $115/hour, and 57.5 hours worked in 2009 at a rate of $120/hour.

[9] The Court also reduced Mr. Russo's hours for the scheduling conference from 10.2 to 2.0, for trial preparation from 31.5 to 20.0, and for summary judgment matters from 76.0 to 60.0. Ms. Schoolcraft's hours billed for all of these matters were reduced in proportion to the amount Mr. Russo's hours were reduced.

10

C.      Costs

Plaintiffs initially requested an award of costs for this litigation in the amount of $18,667.96. ERISA allows for an award of reasonable costs to the prevailing party, and the Court may allow costs usually recoverable under 28 U.S.C. § 1920.[10]

Mr. Russo asks for costs in the amount of $1,581.60 for copying expenses.  Under 28 U.S.C. § 1920, the Court may allow costs for copies of documents.  However, courts have held that "[p]hotocopying expenses will be allowed 'only to the extent that the copies were used as court exhibits or were furnished to the court or opposing counsel.'" *O'Bryhim v. Reliance Standard Life Ins. Co.*, 997 F. Supp. 728, 737 (E.D. Va. 1998) (quoting *Bd. of Directors, Water's Edge v. Anden Group*, 135 F.R.D. 129, 138 (E.D. Va. 1991)).  Electronic filing became mandatory in the Southern District of West Virginia on May 1, 2006, before Plaintiffs' complaint was filed.  Parties file documents with the Court electronically and send documents to opposing parties electronically. Thus, copying of court documents is unnecessary.

In addition, other District Courts in the Fourth Circuit have required attorneys to provide the purposes for which the copies were made or the charge per copy.  *See O'Bryhim*, 997 F. Supp. at 737.  Even though Mr. Russo has provided the charge per copy, he has not given the specific

---

[10] 28 U.S.C. § 1920 states:

> A judge or clerk of any court of the United States may tax as costs the following (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

purposes of the copies.  Because Mr. Russo has not explained the purposes of the copies and parties do not have to make copies to provide the Court with documents, copying costs will not be awarded.

Furthermore, the Court will not award Mr. Russo the $186.08 requested for duplication of cassette tapes because Mr. Russo did not provide a description of the tapes or the purposes of the tapes.

Mr. Russo also asks for $2,500.00 for retaining an expert, Ross Dionne.  Expert fees can only be awarded to the extent that witness fees would be awarded under 28 U.S.C. § 1821.  *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987).  Under 28 U.S.C. § 1821, only a witness who comes before a court or participates in a deposition may be reimbursed.  Because Mr. Dionne did not appear in court and was never deposed, the Court cannot award any fee for Mr. Dionne, much less the $2,500.00 retainer fee.  Similarly, Mr. Russo asks for $127.00 for "witness fee and mileage" for Elizabeth Ann Jordan.  Ms. Jordan never appeared in court and was never deposed, so no fee can be recovered for her expenses either.

Mr. Russo asks for $6,158.81 in Westlaw charges.  "The majority of federal courts subscribe to the view that costs of computer legal research are properly reflected as part of the law firm's overhead and, as such, are a factor to be included in the setting of attorneys fees as opposed to ordinary costs."  *O'Bryhim*, 997 F. Supp. at 737.  Thus, the Court will not award Mr. Russo the $6,158.81 requested for Westlaw charges as a cost.

Mr. Russo also submitted as costs several charges for postage and phone calls.  Postage and phone call costs are "incidental expenses of litigation and therefore not allowable costs under Rule 54(d) or 28 U.S.C. § 1920."  *O'Bryhim*, 997 F. Supp. at 737.  Therefore, the Court will not award costs for postage and phone calls.

Mr. Russo also requested recovery of money spent on "tolls" and "mileage," lodging for Plaintiff during a deposition, and "meals" during a conference meeting. These type of costs are not compensable under Federal Rule of Civil Procedure 54(d) or 28 U.S.C. § 1920, and will not be awarded.

Mr. Russo requested $3,410.15 for the deposition transcript costs of Robin Cook, James Jones, Thomas Hannigan, Kevin Jordan, and Beth Frye Jordan, who are either parties or important witnesses. "A district court should award costs when a deposition is used at trial or the taking of a deposition is reasonably necessary at the time of its taking." *LaVay Corp. v. Dominion Fed. Sav. & Loan Ass'n*, 830 F.2d 522, 528 (4th Cir. 1987). The deposition transcripts requested here were reasonably necessary for preparation for trial at the time they were taken because trial and discovery were still ongoing. The Court will award $3,410.15 for the costs of these deposition transcripts.

Costs for a process server and filing fee are allowable costs under 28 U.S.C. § 1920. *See O'Bryhim*, 997 F. Supp. at 738. Thus, the Court will award $1,053.05 for the process server and $350.00 for the filing fee.

Based on the foregoing analysis, the total amount the Court will award for costs equals $4,463.20 for the deposition transcripts, process server, and filing fee.

13

*III. CONCLUSION*

The Court's total award may be summarized as follows:

| | Amount Requested | Amount Awarded |
|---|---|---|
| Mr. Russo | $196,225.00 | $77,975.50 |
| Ms. Schoolcraft | $28,980.00 | $18,065.00 |
| Other Attorneys & Librarian | $9,112.50 | $0.00 |
| Costs | $18,667.96 | $4,463.20 |
| TOTALS | $252,985.46 | $100,503.70 |

For the foregoing reasons, the Plaintiffs' Petition [Docket 161] is **GRANTED IN PART AND DENIED IN PART**, and the Court **AWARDS** Plaintiffs the sum of $96,040.50 in attorneys' fees plus costs of $4,463.20, for a total of $100,503.70. The other issues in this case having been previously resolved, this civil action is hereby **DISMISSED**.[11] A separate judgment order will be entered this day on the attorney's fees and costs award.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        September 29, 2009

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

---

[11] In addition, the remaining motions in limine, [Docket 122], [Docket 123], [Docket 124], [Docket 125], and [Docket 126] are **DENIED AS MOOT**.

14